**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. DANTE ANDERSON, Defendant. | Case No. CR 08-121 JSL<br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

**INTRODUCTION**

The Indictment in this case is a two count indictment. Count One charges Defendant Dante Anderson with violating 18 U.S.C. § 922(g)(1), which makes it "unlawful for any person . . . who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year" to "possess . . . any firearm." Count Two charges Anderson with unlawful possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). According to the Indictment, Anderson violated § 922(g)(1) because he possessed a firearm after being convicted in California state court of either or both of two "crime[s] punishable by imprisonment for a term exceeding one year." Both of the state court convictions were based on *nolo contendere* pleas.

Anderson has moved to dismiss Count One on the ground that in the circumstances of this case a violation of § 922(g)(1) cannot be predicated on a state court conviction that was based on

a *nolo* plea. For the reasons explained herein, the Court agrees. Accordingly, it grants the Motion to Dismiss and dismisses Count One.

**BACKGROUND**

The events that gave rise to this case began in 2005. That year, Anderson was charged in the Superior Court of California, County of Los Angeles, with vandalism in violation of California Penal Code § 594(a). Two years later, Anderson was charged in Superior Court with possession of a dangerous weapon ("brass knuckles") in violation of California Penal Code § 12020(a)(1). The crimes charged in both cases were "punishable" by a term of imprisonment of more than one year. The proceedings in both cases were terminated by *nolo contendere* pleas rather than by either a guilty plea or a jury trial. In the vandalism case, Anderson was sentenced only to the time already served in county jail and released forthwith after sentencing. In the "brass knuckles" case, he was sentenced to 180 days in county jail, with 127 days of time and work credits.

According to the Presentence Report, the events that led to the charges in this new federal case are as follows. On January 1, 2008, at approximately 12:15 a.m., officers from the Los Angeles Police Department responded to a report of gunshots heard in the rear alley of 4051 Muirfield Road in Los Angeles, California. As the officers commenced this investigation, they came upon Anderson, who was holding a weapon in his hand. The officers ordered Anderson to put down the weapon and he immediately complied. Anderson then tried to run away, but tripped and fell. The officers subsequently took him into custody without further incident and seized the weapon that had been in Anderson's hand. By virtue of Anderson's convictions in the state vandalism case and the state "brass knuckles" case, the government deemed Anderson's possession of the weapon to be unlawful under 18 U.S.C. § 922(g)(1). That analysis led to the allegations contained in Count One of the Indictment.

The procedural process that led to the Motion to Dismiss in this case was very unusual. The Court's first substantive consideration of this case commenced only after Anderson had offered, and the

Court had accepted, a plea of guilty to Count One.[1] At the change of plea hearing, the Court listened to the government's proffer of the evidence by which it would prove the factual elements of a § 922(g)(1) violation. The Court then concluded that if this evidence was introduced at trial a reasonable juror could find beyond a reasonable doubt that Anderson was guilty of violating § 922(g)(1). Based on that showing, the Court concluded that there was an independent factual basis for Count One. Subsequently, the Court asked Anderson if he had done the acts with which he had been charged and if, to the best of his knowledge, the evidence to be offered by the government was true. Anderson responded "yes" to both questions.

Approximately one month later, the Court received Anderson's Presentence Report. While reviewing it, the Court learned for the first time that both of the state court convictions that the government was relying on to establish its federal case had been based on *nolo contendere* pleas. This previously unknown fact caused the Court concern because it had serious doubts that the government could lawfully base a § 922(g)(1) prosecution on a state *nolo* conviction. Subsequently, the Court expressed these doubts in open court. Thereafter, at Anderson's request, the Court granted Anderson permission to file a Motion to Dismiss.

On May 27, 2009, the Motion was filed and the government filed its opposition.[2] Based on its review of these documents, the Court concluded that the Motion raised important issues that the parties had not yet addressed. On July 13, 2009, the Court vacated the guilty plea and ordered another round of briefing.

---

[1] In exchange for Anderson pleading guilty to Count One, the government had agreed to dismiss Count Two.

[2] Count Two is presently stayed pending the appeal of Count One. It has no issues in common with this Motion.

## DISCUSSION

### *Introduction*

Count One alleges a violation of 18 U.S.C. § 922(g)(1), which, in relevant part, provides: "It shall be unlawful for any person . . . who has been convicted in any court [] of a crime punishable by imprisonment for a term exceeding one year" to "possess . . . any firearm."

As used herein, the term "predicate conviction" refers to a prior conviction used by the government as the necessary factual element of the crime established by § 922(g)(1), without which the later acts of Anderson would not be unlawful under the statute.

As used herein, the term "Motion Issue" refers to the issue that is to be decided by this Motion.

The Court defines the Motion Issue as follows: Can a conviction in this case be valid under federal law if the predicate conviction relied upon by the government rests on a *nolo contendere* plea in which no admission or proof of the defendant's guilt is or was required?

### *Context*

As noted above, the Motion Issue was first raised by the Court because of its concern that the prior convictions that the government was asserting as predicate convictions had been based on *nolo contendere* pleas. Briefly stated, that concern was based on the Court's general understanding that *nolo contendere* pleas do not require either admission or proof of guilt. Specifically, in cases like Anderson's, the Court understood that the conviction that follows from a *nolo* plea depends on the defendant's consent to waive his right to be deemed "innocent until proven guilty" so that the proceedings can be brought to an end satisfactory to all parties by producing both a valid conviction and sentence.

Ultimately, the Court's initial concern stemmed from the fact that it did not see how Anderson's consent to be convicted and sentenced in a California state court without admission or proof of guilt could be extended to apply to this case. To the Court, the use of those convictions as the government

was attempting to use them would violate both the nature and the spirit of the bargain which the state court, the state prosecutor, and Anderson struck when the *nolo* pleas were entered. Also, if the Court allowed the government to use Anderson's state court convictions as the foundation for this independent federal crime, then it seemed that Anderson's guilt in this case would rest entirely on alleged previous acts that, by agreement, had never been admitted or proven. Early research provided no clear answers, but seemed to confirm the Court's belief that the Motion Issue needed to be addressed.[3]

After Anderson decided to file the Motion, the Court expected the briefing to address the Motion Issue as it has been defined herein. Unfortunately, the briefing did not address the issue in this way. Instead, Anderson addressed it primarily on the basis that his plea was not knowing and voluntary, relying in major part on Federal Rule of Criminal Procedure 11. The government, in turn, addressed the issue on the basis of an argument that the Motion Issue was entirely controlled by state law. The result was that the Motion Issue, as framed by the Court, was barely touched upon by the parties.[4] After a second round of briefing did not improve matters, the Court greatly expanded the scope of its own research and produced a partial draft opinion, hoping to further focus the issue. Finally, however, mindful that the Ninth Circuit would consider the Motion Issue *de novo*, the Court decided that there was no good reason to further delay issuing a ruling on this Motion. This was particularly true in light of the fact that Anderson had already been in custody for a period of time longer than the likely sentence he

---

[3] The Court also had in mind the product of the research done in two previous cases in which the Court had expressed in published opinions grave reservations about the way *nolo contendere* pleas are used in California state courts, as well as the way in which the government uses a "gang profile" to aid in law enforcement efforts. *See* Banyard v. Duncan, 342 F. Supp. 2d 865, 877-80 (C.D. Cal. 2004); United States v. Turner, 901 F. Supp. 1491, 1499-1501 (C.D. Cal. 1995).

[4] The Court has no criticism of counsel for this failure to have a meeting of the minds. If there is fault, the Court readily accepts its share of the blame.

would have served if the original guilty plea had been accepted.[5] Accordingly, the Court decided it should resolve the Motion immediately, with the completed opinion to follow.[6]

***Analysis***

Once the Motion was filed, the Court's analysis concentrated first on the cases that were cited by the government. With the partial exception of three out-of-circuit decisions involving appeals of § 922(g)(1) convictions, the Court agreed with the result and reasoning in all of the cited cases, but found them irrelevant. As for those three out-of-circuit decisions, two were from the Tenth Circuit and one was from the Second Circuit.[7] In those cases, all three predicate convictions rested on state court *nolo contendere* pleas, and in all three cases the Circuit court affirmed the district court's conviction. The Court does not, however, find those cases persuasive. In all three cases, the issue was framed and answered by reference to whether the state court conviction fit the definition of "conviction" as contemplated by § 922(g)(1). But, as explained in more detail immediately below, whether Anderson's state court convictions fit the statutory definition of "conviction" is not at issue in this case. Rather, what is at issue was neither raised nor decided in those cases. Consequently, those three cases have no bearing on this Motion.

The Court then turned to the government's argument that the issue in this case is controlled by California law. That argument was based on the government's interpretation of three statutes. The first

---

[5] Although the government originally sought a sentence in accordance with the Sentencing Guidelines, a thorough consideration of the record in light of the sentencing factors of 18 U.S.C. § 3553 strongly suggested to the Court that the sentence proposed by the government would be "greater than necessary." *See* 18 U.S.C. § 3553. For that reason, the Court believed that Anderson had already served enough time for this alleged crime.

[6] On October 23, 2009, the Court summarily ruled on this Motion.

[7] Those cases are as follows: United States v. Brzoticky, 588 F.2d 773 (10th Cir. 1978); United States v. Williams, 442 F.3d 1259 (10th Cir. 2006); and, Burrell v. United States, 384 F.3d 22 (2d Cir. 2004).

two of those statutes are 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 921(a)(20). The third is California Penal Code § 1016(3).

Briefly stated as to the former statute, the government's chain of reasoning is as follows. One of the factual elements of the crime established by § 922(g)(1) is that there must be a prior conviction of "a crime punishable by imprisonment for a term exceeding one year." Section 921(a)(20) directs that, for purposes of § 922(g)(1), the definition of the word conviction must be determined by the law of the jurisdiction in which the proceedings were held. Since under California law the prior convictions fit the definition of conviction as contemplated by § 922(g)(1), Anderson's state court convictions, therefore, can be used to satisfy the factual element. Based on the foregoing reasoning, the government contends that the fact that the prior convictions can be used as predicate convictions under § 922(g)(1) is dispositive of the Motion.

By the Court's definition of the Motion Issue, however, the government's argument misses the mark. Section 922(g)(1) establishes the factual elements of the crime that must be found by a jury to support a guilty verdict. But § 922(g)(1) does not determine what cases proceed far enough to reach the jury. Stated otherwise, as the Court has framed the Motion Issue, it is one of law that must be answered before the elements of § 922(g)(1) are proved or the determinations of law required by § 921(a)(20) become relevant. For that reason, then, the government's reliance on § 922(g)(1) and § 921(a)(20) is misplaced.[8]

The only other authority to which the government has pointed to justify its position that California law controls the outcome of the Motion is California Penal Code § 1016(3). This statute reads as follows:

> *Nolo contendere*, subject to the approval of the court. The court shall ascertain whether the defendant completely understands that a plea of *nolo* contendere shall be considered

[8] This is also why the government's reliance on Brzoticky, 588 F.2d 773, Williams, 442 F.3d 1259, and Burrell, 384 F.3d 22, is misplaced.

> the same as a plea of guilty and that, upon a plea of *nolo contendere*, the court shall find the defendant guilty. The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes. In cases other than those punishable as felonies, the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based.

Cal. Penal Code § 1016(3).

What the government almost refuses to recognize is that this is a federal case filed in a federal court, to be tried before a federal jury and, in the event of a conviction, to be sentenced under federal law. Accordingly, absent a very clear statement from Congress that the Motion Issue, which is an issue of law that has nothing to do with the elements of the crime, should be decided under state law, the Court can see no connection between this California statute and this case.

Moreover, a close reading of the statute shows that it is unhelpful to resolving the Motion Issue. California Penal Code § 1016(3) appears in Part Two of the California Penal Code as one of California's Rules of Criminal Procedure. Even to suggest that this statute might have any application beyond the case in which the *nolo contendere* plea is entered is to ignore the very distinction between Part One and Part Two of the California Penal Code.

The words of the statute confirm the Court's analysis. The first sentence provides that *nolo* pleas are subject to the approval of the court. As for the second sentence, it explains exactly what the court must do before accepting a *nolo* plea. Thus, these sentences merely provide direction to the state court when it presides over the case in which the *nolo* plea is entered.

The third sentence states that after the plea is accepted, the legal effect of that plea "shall be the same as that of a plea of guilty for all purposes." The government has continuously argued that this broad language applies in this independent federal case. There is, however, nothing in that language

that even remotely suggests that it is intended to mean that a *nolo contendere* plea, once accepted, is the same as a guilty plea for any purpose other than that required for the remainder of the case in which that *nolo* plea was entered. That is, while a *nolo* plea may be the same as a guilty plea "for all purposes," it is only the same "for all purposes" in the case in which it is entered. Therefore, the third sentence provides no basis for arguing that it is the same as a guilty plea for all purposes in all other cases in all other jurisdictions in which the difference between *nolo contendere* pleas and guilty pleas might be relevant or controlling.

The fourth and final sentence of California Penal Code § 1016(3) also does not support the government's position. That sentence prevents certain uses of non-felony plea proceedings from being used in civil cases and, thus, has no bearing on this case. It cannot be interpreted as a legislative directive of how felony *nolo* pleas can be used in other cases.

The Court only dwells on this statute because there appears to be much confusion on this issue. It should be self-evident that a *nolo* plea is not the same thing as a guilty plea and, therefore, it cannot in all conceivable cases be treated as a guilty plea for all purposes. There is a distinction between the two types of pleas and, in various instances, that distinction is meaningful and must be given credence to. Despite the foregoing, the government maintains that California Penal Code § 1016(3), a California procedural statute, extends into the federal realm. But the language of California Penal Code § 1016(3) cannot be read to have such broad application and implication, for to read it in such a way essentially eviscerates a distinction that has existed in the law for hundreds of years.

Because both parties failed to direct the Court to any authority that answered the Motion Issue, the Court was forced to conduct its own independent research with the hope of finding relevant authority.[9] The Court's research shows that over time there has been a profound change in the direction

[9] The Court's research has included all of the cases and statutes cited by the parties. It has also reviewed a leading treatise on the subject, *see* 1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure Criminal, §§ 175-76 (4th ed. 2007), as well as the Advisory Committee Notes and annotations to the Federal Rule of Criminal Procedure 11.

in plea practices. This change stems from courts' recognition that as legislatures have become increasingly prone to mandating severe sentences of general application, pleas and plea bargains have become a necessary means for dealing with legislatively mandated individual miscarriages of justice.

As its independent research progressed and the significance of the history of *nolo* pleas became clearer, the Court focused more closely on the case of North Carolina v. Alford, 400 U.S. 25 (1970). That case marked a legal watershed in which, as shown by hindsight, the law made a major change of direction. Alford was the first case in which the Supreme Court recognized the need not just to protect innocent defendants from ill-advised or coerced guilty pleas, but also to provide a judicial means by which, with the consent of all concerned, the criminal proceedings could produce valid convictions and sentences that were not based on admissions or proof of guilt solely in order to avoid the undesired consequences that might follow if the proceedings were carried to their conclusion.

By way of a writ of habeas corpus, Alford challenged his conviction, which was based on a guilty plea entered while he adamantly asserted his innocence of the crime charged. Alford, 400 U.S. at 28-30. The original charge against Alford was for first degree murder. Id. at 26-27. If convicted of that charge at trial, Alford would have faced the death penalty, unless the jury recommended a life sentence. Id. at 27 n.1. Pursuant to a plea bargain, Alford was allowed to plead guilty to a lesser included offense of second degree murder and was then sentenced to a prison term of thirty years. Id. at 27-29. For an unspecified reason, Alford thereafter filed the writ of habeas corpus to set aside the plea, and the case ultimately found its way to the Supreme Court.

At that time, there was a split of authority among the circuits on the issue of whether state or federal courts could accept guilty pleas while the defendant continued to claim innocence. Id. at 33. The Supreme Court, however, did not address the reasoning of the various courts that had established

---

Additionally, the Court surveyed California law for any authority that might bear on this issue. No California court has, however, ever addressed this issue or held that a *nolo* conviction could serve as a predicate conviction under California's own felon in possession statute.

the split of authority on the issue. Instead, it based its decision almost entirely on the fact that had Alford simply entered a *nolo contendere* plea he could have accomplished the result he had sought with a guilty plea, without raising the issue before the Court. Id. at 36-37. From this premise, the Court easily concluded that there was no constitutional reason for Alford's choice of the wrong procedural plea mechanism to interfere with a plea decision that was knowingly and voluntarily made. Id. at 37-38.

For present purposes, confirmation of the foregoing analysis may be found from the following quotations.

First:

> Implicit in the *nolo contendere* cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive trial and accept the sentence. . . . Throughout its history, that is, the plea of *nolo contendere* has been viewed not as an express admission of guilt but as consent by the defendant that he may be punished as if he were guilty and a prayer for leniency.

Id. at 36 & n.8.

Second, the Supreme Court noted that "Fed. Rule Crim. Proc. 11 preserves th[e] distinction [between a guilty plea and a *nolo* plea by] its requirement that a court cannot accept a guilty plea 'unless it is satisfied that there is a factual basis for the plea . . . .'" Id. at 36 n.8

Third, the Supreme Court observed that the *nolo contendere* cases previously discussed in its opinion would be directly on point if Alford had simply "insisted on [a *nolo*] plea, but refused to admit the crime." Id. at 37.

Fourth, and most importantly, the Supreme Court held:

> Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of

a criminal penalty. An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

Id. at 37.

Taken together, these quotations are interpreted as follows. It is not a constitutional requirement that a defendant admit he is guilty before he is convicted and sentenced because a conviction and sentence can be achieved through the *nolo contendere* plea. Under federal law, the *nolo* plea differs from a guilty plea in that the guilty plea requires a factual basis and a *nolo* plea does not. A reasonable fear of the consequences of going to trial can support the entry of a *nolo contendere* plea that will result in a valid conviction and sentence, even if the defendant does not admit guilt and there is no legal proof that the defendant actually committed the charged crime. A guilty plea entered pursuant to a plea bargain which is shown by the record to be knowing and voluntary and supported by a factual basis can be treated like a *nolo contendere* plea for purposes of the imposition of a sentence of imprisonment.

Nothing in Alford, however, suggests in any way that a *nolo contendere* plea could be considered "the same as that of a guilty plea for all purposes." On the contrary, Alford holds that, in circumstances similar to those presented by Alford, a guilty plea can be considered the same as a *nolo contendere* plea to the extent necessary to support a valid conviction and a sentence of imprisonment. This is largely because, as the Supreme Court recognized in Alford, the *nolo contendere* plea serves an important role in this country's judicial system. It relieves the parties of the otherwise inescapable choice between, on the one hand, forcing the defendant to admit his guilt and, on the other, forcing the government to try to prove its case beyond a reasonable doubt to a jury or to dismiss the case entirely. The *nolo* plea, therefore, is a compromise plea. As part of the compromise, the defendant agrees not to test the government's ability to prove its case beyond a reasonable doubt and also agrees not to raise any of the defenses he might have raised at trial. In exchange, it is agreed upon by all those involved that the one thing the *nolo* plea cannot be used for is to establish the defendant's guilt. Yet, that is exactly what

the government is attempting to do with Anderson's prior *nolo* convictions.

In the years since Alford was decided, the *nolo* plea has become an increasingly important procedural device in this country's legal system. In 1970, when Alford was decided, the time when Congress and state legislatures would begin their wholesale entry into the field of criminal sentencing was still in the somewhat distant future. Between that time and now, however, at least in the inner city courts of this district, the need for having a process that allows a defendant, with his consent, to be convicted and sentenced forthwith without any inquiry into the facts either by admission or proof has become a practical necessity.

One needs look no further than the facts of this case to see exactly why the *nolo* plea is useful and important. At the time he entered the *nolo contendere* pleas in the vandalism and "brass knuckles" cases, Anderson was in the same position as Alford was when he pleaded guilty in North Carolina. Although the stakes were higher for Alford, in many ways Anderson's situation was more compelling. Unlike Alford in Kentucky, who would have benefitted from acquittal, Anderson had no material interest in the outcome of either of the California trials he faced. Even if he were acquitted he would have still been worse off for having gone to trial. Anderson's only interest in either of the two cases was to be released from custody as soon as possible.

In the vandalism case, Anderson was in custody for seventeen days before the disposition. After entering his plea pursuant to the plea bargain, Anderson was sentenced to 25 days in county jail which, with time-served credits, entitled him to be released forthwith. Even if he had insisted on his right to trial and been acquitted, Anderson would have been worse off than he was by taking the deal that was offered. In addition, Anderson was advised during the plea colloquy that if convicted at trial he would not be released forthwith, but rather would be facing a prison sentence of 16 months to three years.

In the "brass knuckles" case, the *nolo contendere* plea was entered in virtually the same circumstances. In that case, Anderson was sentenced to 180 days in county jail but before he came before the judge he had already spent 85 days in custody and had accumulated 42 days of time-served

and work credits. Pursuant to the plea bargain, Anderson was sentenced to 180 days in county jail, with time served and other credits for 127 days. Assuming the same rate of accumulating credits by accepting the plea bargain, Anderson would only have had to serve approximately one more month in county jail. There being no reason to believe that he could get to trial in that time, the chance of acquittal was, in that case too, of no value. By going to trial, all Anderson could have accomplished would have been to spend more time in custody and incur the risk of 16 months to three years in prison without the possibility of benefit.

Even without reference to Alford, both of Anderson's predicate convictions appeared to have presented the very circumstance for which the *nolo contendere* plea was designed. By going forward and asserting his rights, Alford had nothing to gain and much to lose. If he did go forward he would lose the favorable sentence being offered. He would also spend more time in total custody in all events and volunteer for the risk that if he were not acquitted he would spend between 16 months and three years in state prison.

The Court has no reason to believe that Anderson was aware of the difference between the "no contest" plea to which he agreed and a guilty plea, or that he would have refused to plead guilty if the plea offer had provided for that. But he was not offered that choice. The choice that he was offered, and did accept, was to go forward in accordance with the agreement of the parties, which then allowed the state court to convict and sentence him "as if he were guilty," but without either an admission that he did the acts with which he was charged or even a showing of a legitimate factual basis. All that mattered to anyone involved in those cases was that Anderson knew the rights that he was waiving for purposes of those cases, and that he knew what he was doing and acting in his own best interests.

This case is also a paradigmatic example of why it is dangerous to base an independent federal crime on such a slender reed as a California state court *nolo* conviction. The Court reviewed the records of both of the state court convictions. One of the purposes of this review was to ascertain what the records revealed about the specific acts that Anderson was alleged to have done that led to his

prosecution. The answer in both cases was "absolutely nothing." In both state court proceedings, Anderson was simply read the complaint and asked how he pleaded without any further description of what he was alleged to have done or how it might be proved at trial. Although counsel was asked to stipulate to a factual basis, it seems clear from the record that there was little or nothing on which to base such a stipulation other than the police reports without which no good faith criminal complaint could have been initiated.

In light of the foregoing, the Court concludes that neither of Anderson's state court convictions can be used to establish his guilt in this case and, therefore, neither is sufficient to justify convicting him of a federal crime. Accordingly, this Court holds that under federal law a predicate conviction that is not supported by proof of any kind that the defendant actually committed any of the criminal acts with which he was charged cannot be used to supply a necessary element of a federal crime.

**CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss be GRANTED. Accordingly, Count One of the Indictment is dismissed.

IT IS SO ORDERED.

DATED: Jan. 13, 2010

Spencer Letts

J. Spencer Letts

Senior United States District Judge